# United States District Court
## Northern District of Alabama
### Western Division

03 JUN -3 PM 4: 36

U.S. DISTRICT COURT
N.D. OF ALABAMA

United Mine Workers of America,  ]
                                 ]
     Plaintiff(s),            ]
                                 ]
     vs.                      ]    CV-02-CO-1642-W
                                 ]
The Pittsburg & Midway Coal      ]
Mining Co.,                      ]
                                 ]
     Defendant(s).            ]

**ENTERED**

JUN 0 3 2003

### Memorandum of Opinion

## I.    Introduction.

The court has for consideration defendant Pittsburg & Midway Coal Mining Co.'s motion for summary judgment, filed January 31, 2003 (Doc. #12). This case is a suit to vacate a labor arbitration award. The court has jurisdiction pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1331. The defendant moved for summary judgment to uphold the arbitrator's opinion on grounds that: (1) there is no evidence that the arbitration award is irrational; (2) there is no evidence that it fails to draw its essence from the collective bargaining agreement; (3) and there is no evidence the decision exceeded the arbitrator's authority under the agreement. The issues have been briefed by both parties and are now ripe for decision. Upon due consideration, the motion will be denied.

## II.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## III.   Facts

Plaintiff United Mine Workers of America (UMWA) ("the Union") is a labor union and defendant Pittsburg & Midway Coal Mining Co. (P&M) is a Coal Mine Operator.  Mr. Jones ("Jones") the employee whose termination initiated these proceedings, began working for the company in 1976 and was a member of the Union, through its Local 1926.  Throughout

his tenure at the company, he held various union offices including the position of president.

On January 21, 2002, Jones filed a grievance and the case went through the various steps of the grievance procedure until it was ultimately submitted to arbitration. Daryll Dewberry ("Dewberry") handled the arbitration proceeding for the Union and Mr. Ken Eller ("Eller") served as the defendant's representative. Pursuant to Article XXIII(b)(1) of the labor contract, the Union contacted the Coal Arbitration Service and indicated it needed an arbitrator from the "B-1" panel, which is the panel selected by the union and the consortium of large coal operators. Ambassador Lawrence Loeb (Loeb") came up in the rotation. The arbitration hearing began on February 18, 2002. Though Loeb had never worked with Dewberry, he knew Eller because he had appeared as a representative for various coal companies in previous arbitrations.

After the initial proceedings which consisted of opening statements by both parties and the direct testimony from one of the defendant's witnesses, the arbitrator took a break and encouraged the parties to reach a settlement. During the recess, Loeb told the plaintiff that if the company's position was proven, Jones's discharge would have to be upheld. (Doc. # 18, Exh. 4 at ¶11). During this break, the Union left a tape recorder running which taped a conversation between Loeb and the representatives. Loeb allegedly then referred to Jones as an "arrogant son of a bitch" and the tape was given to Dewberry. (Doc. #12, Dewberry Depo. at p. 35). Loeb also referred to Jones as an "idiot" and indicated that he "screwed up things at the mine." (Doc. #18, Exh. #9). This tape is not part of the record as it has not been produced although an employer-created memo appears to corroborate much of the discussion. (Doc. #18, Exh. # 9).

The parties agreed to try to work out a last chance agreement, which would allow Jones to keep his job under certain contractual conditions, and the arbitration was continued until March 18, 2002. The case was then resubmitted to arbitration because Jones declined to sign the Union's proposed last chance agreement because it included a paragraph that would have prohibited him from taking further legal action. (Doc. #14, Dep. Jones, p. 138-40). Prior to the hearing, the Union asked Loeb to recuse himself. Loeb declined the recusal request. On March 18, 2002, the arbitration was held. At the arbitration, Loeb indicated his displeasure at the recusal request. (Doc. #12, Dewberry Dep. p. 77). Moreover, the arbitrator told Loeb that he had full confidence in Eller and that he knew that if Eller brought a case it was likely to have merit. (Doc. #12, Dep. Dewberry, p. 20).

The decision of the arbitrator was issued on June 24, 2002. He upheld the discharge decision, finding a violation of Article XXII(i)(4) by Jones for two reasons: (1) the grievant did not have proven illness on December 26, and (2) he did not request union business properly on December 28; therefore a dischargeable offense was created for December 26, 28 and 31.

## IV.   Discussion.

The defendant contends that there is no basis for overturning the arbitrator's decision while the plaintiff contends that the arbitration decision should be overturned because: (1) the arbitrator demonstrated evident partiality; (2) the evidence does not support the arbitrator's decision and (3) the arbitrator prevented the union from introducing evidence. The court will address each claim in turn.

## A.    Partiality of the Arbitrator

This action is brought under Section 301 of the National Labor Relations Act, 29 U.S.C.

§ 185 (1994). In *Major League Baseball Players Association v. Garvey*, 532 U.S. 504 (2001)

the Supreme Court explained that "When an arbitrator resolves disputes regarding the

application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even

silly factfinding' does not provide a basis of a reviewing court to refuse to enforce the

award." 532 U.S. 504, 509 (U.S. 2001) (quoting *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 39

(1987)).  Nevertheless, the court does have a duty to review arbitration awards and the

awards are set aside under certain vaguely defined circumstances. As one treatise

explained:

> It is clear that enforcement of an award ordinarily will be denied
> if the award sustains or orders conduct that is illegal or contrary
> to strong public policy, or if the court concludes that the
> arbitrator lacked jurisdiction over the dispute. Also, more or less
> isolated cases have presented facts leading the court to strike
> down awards on grounds such as bias or partiality by the
> arbitrator.

Elkouri & Elkouri, How Arbitration Works 35 (5th ed. 1985). *see also Loveless v. Eastern*

*Airlines, Inc.*, 681 F.2d 1272, 1275 (11th Cir. 1982) (noting that given the limited judicial role

in the arbitration process, courts have confined their scrutiny to issues of "procedural

fairness and arbitral impartiality."). The Eleventh Circuit has not addressed how the court

will treat accusations of bias in a labor dispute brought under the National Labor Relations

Act.    Therefore, the Eleventh Circuit's precedent regarding bias under the Federal

Arbitration Act ("FAA") is instructive. *See Consolidation Coal Co. v. Local 1643 United Mine*

*Workers of America*, 48 F.3d 125, 129 (4th Cir. 1995) (applying the standard to a collective

bargaining case); *see also Apperson v. Fleet Carrier Corp.,* 879 F.2d 1344 (6th Cir. 1989);

*Morelite Constr. Corp. v. New York Dist. Council Carpenters Benefit Funds,* 748 F.2d 79

(2nd Cir. 1984); *United States v. International Brotherhood of Teamsters,* 170 F.3d 136, 147

(1999)(also applying the FAA to collective bargaining agreements). Under section 10 of the

FAA, a court may vacate an arbitrator's award "where there was evidence of partiality or

corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2). In *Ginaelli Money*

*Purchase Plan and Trust v. ADM Investor Services, Inc.,* the Eleventh Circuit held that an

arbitrator's decision may be vacated due to "evident partiality" when there is evidence that:

(1) an actual conflict exists or (2) the arbitrator knows of, but fails to disclose information

which would lead to a reasonable person to believe a conflict exists. 146 F.3d 1309, 1312-13

(11th Cir. 1998). The test, however, appears to be somewhat broader than these two steps

would indicate. For example in *Mays v. Lanier Worldwide, Inc.,* the court held that an

"award must establish that the undisclosed facts create a 'reasonable impression of

partiality.'" 115 F. Supp. 2d 1330 1349-50 (M.D. Ala. 2000) (citing *Middlesex Mut. Ins. Co. v.*

*Levine,* 675 F.2d 1197, 1201 (11th Cir. 1982). Moreover, the standard is less strict than the

test which is applied when a judge is accused of showing bias. As the Supreme Court has

explained courts "should if anything, be even more scrupulous to safeguard the impartiality

of arbitrators than judges, since the former have completely free right to decide the law as

well as the facts and are not subject to appellate review." *University Commons-Urbana-Ltd.*

*v. Universal Constructors, Inc.,* 304 F.3d 1331, 1338 (11th Cir. 2002) (quoting *Commonwealth*

*Coatings Corp. v. Continental Casualty Cas. Co.,* 393 U.S. 145 (1969)). The evidence must

be "direct, definite and capable of demonstration rather than remote, uncertain and

speculative." *Id.* (quoting *Middlesex Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (11th Cir. 1982)).

"Partiality need not be actually proven to be the basis for a reasonable conclusion of partiality, but it must not be based simply on speculation either. *International Brotherhood of Teamsters*, 170 F.3d at 146-47; *see also Austin South I, Ltd. v. Barlow-Malow*, 799 F. Supp. 1135, 1142 (M.D. Fla. 1992) (noting the "heavy burden" of vacating arbitration and indicating that the "party must demonstrate that the arbitrator had a personal interest in the proceedings, whether pecuniary or otherwise which would have biased his or her judgment in the proceedings."); *In re Prudential Insurance Co. of America*, 2002 WL 2007188 (3rd. Cir. 2002) (refusing to find evident partiality based on "unsubstantiated charges of general bias and prejudice.")

The "reasonable impression of partiality" or "evident bias standard" is not solely limited to a pecuniary interest, but typically bias has been found only where there was corresponding evidence of a business relationship.  Frequent interactions between an arbitrator and a party's representative do not necessarily correspond to evidence of bias. As the Eleventh Circuit explained in *University Commons-Urbana*:

> [S]uch familiarity due to confluent areas of expertise does not indicate bias. Rather, so long as the previous interactions do not represent part of an ongoing business relationship, it may be an asset since, an "arbitrator's experience in an industry, far from requiring a finding of partiality, is one of the factors that can make arbitration a superior means of resolving disputes."

304 F.3d 1331 at 1340 (quoting *Scott v. Prudential Sec. Inc.*, 141 F.3d 1007, 1016 (11th Cir. 1998).  Thus, previous contact with a representative of one of the parties alone will not suggest evident partiality. *Id.*

The question remains, what is sufficient to fulfill the "evidence partiality standard?" Courts have concluded that bias exists if "an arbitrator *concurrently with the arbitration*, partakes in a proceeding in which counsel for one of the parties to the arbitration is also participating." *Id.* (citations omitted). Past or tenuous associations are not enough unless they are fairly substantial. *Compare ADM Investor Serv., Inc.*, 146 F.3d at 1312 (reversing a district court's decision to vacate arbitration based on evidence that the arbitrator worked for a law firm which had represented the defendant in several business transactions), *with Olson v. Merrill Lynch, Pierce, Fenner & Smith*, 51 F.3d 157, 159-60 (3rd Cir. 1995) (finding evident partiality where arbitrators failed to disclose that their employers had ongoing business relationships with the defendant); *Austin South I*, 799 F. Supp. at 1143-45 (no evidence of bias where the arbitration was involved in a single, business venture five years prior to the case which was disclosed). Yet, at least one court has held that apparent and obvious behavior which approaches "into the realm of clear prejudice" is sufficient to vacate an award. *Flexsys America, L.P. v. Local Union No. 12610*, 88 F. Supp. 2d 600, 604 (W. Va. 2000); *see also, Austin South I*, 799 F. Supp. at 1143 (holding that an arbitrator's letter to defendant apologizing for difficulties in the case due to his alleged bias and indicating that he hoped his decision would be upheld insufficient to prove bias); *Harrison Northwest Airlines, Inc.*, 1999 WL 1276538 (N.D. Ga. 1999) (holding that letters exchanged by neutral arbitrator and employer indicating concerns about the process insufficient to constitute bias).

In *Flexys*, the court found that there was sufficient evidence of bias where the arbitrator called the employer's representative and, in an *ex parte* conversation, told her that

he had decided to grant the grievance because he concluded the supervisor was homosexual. 88 F. Supp. 2d at 602. Referring to a hearing, the Arbitrator told the representative that the supervisor "appeared flighty" and that if he thought that the supervisor was "a queer" that he would grant the grievance on that basis alone. *Id.*

Although the facts in this case are not as egregious as those in *Flexys*, the comments and proceedings present questions of fact as to whether a "reasonable person would find evidence of partiality." *Mays v. Lanier Worldwide*, 115 F. Supp. 2d 1330, 1349 (M.D. Ala. 2000). From the deposition presented, and viewing the facts in the light most favorable to the nonmoving party–the plaintiff's case is as follows:

> (1) the Arbitrator and the employer representative had a relationship from prior dealings which created a prejudicial inference in the employer's favor;
>
> (2) the Arbitrator made statements which indicated that he had prejudged the dispute in the employees favor;
>
> (3) the Arbitrator referred to the grievant as an "arrogant son of a bitch" during the off-the-record discussion with the representatives.

This case involves both specific and direct arguments that the arbitrator was biased. As the defendants correctly point out, there is absolutely no evidence of an ongoing business relationship between Eller and Loeb, nor is there evidence that there ever has been. While the arbitrator's familiarity with the employer representative alone would be insufficient to deny summary judgment, his statements as reflected in the internal memorandum of the defendant's representative indeed appear to border on clear prejudice. *Flexys*, 88 F. Supp. 2d at 604. Though much of the plaintiff's case is based on a tape which has yet to appear and

whose contents has yet to be fully revealed, the internal memorandum provides enough evidence to create an issue of fact on the matter.[1] Moreover, the statements that Eller would not have brought a case unless it was (to summarize) airtight also create issues of fact on whether the Jones received a fair hearing.

### B.    Other Allegations

The union also argues that the arbitrator's decision was not based upon the collective bargaining agreement and that he failed to allow the parties to introduce proper evidence. The plaintiffs correctly note that courts typically uphold arbitration decisions so long as the arbitrator arguably construed or applied the contract, so long as he acted within the scope of his authority. *See United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 38 (1987). In this case, absent a motion for summary judgment from the plaintiff's the court is reluctant to delve any further into the arbitrator's fact-finding practices. Accordingly, until the court receives further information, it will refrain from holding what the arbitrator should and should not have done.

---

[1] The Eleventh Circuit's standard for what a court may consider during summary judgment proceedings has been explained as follows:

> Some courts, including our own, appear to have restated the general rule to hold that a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be "reduced to admissible evidence at trial" or "reduced to admissible form." (Citation omitted).  These courts have coined these phrases from language appearing in the Supreme Court's decision in *Celotex Corp. v. Cartrett*, 477 U.S 317, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986), which held that a nonmoving party, in opposing a motion for summary judgment, need not produce affadavits, but may refer the district court to 'pleadings, depositions, answers to interrogatories, and admissions on file, as provided by FRCP 56(c)."

*Macuba v. Deboler*, 193 F.3d 1316, 1322-23 (footnotes omitted).  In this case, although the parties have not produced the actual tape-recorded conversation, they have produced evidence of an internal memorandum confirming the proceedings which suggests that the statements could be "reduced to admissible form." *Id.*

## V.    Conclusion.

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ___3rd___ of June, 2003.

L. Scott Coogler
United States District Judge